UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLENE LA PATRA,

                              Plaintiff,

                                                    DECISION AND ORDER

                                                    05-CV-6200L

            V.

JO ANNE B. BARNHART,
Commissioner of Social Security,

                              Defendant.
_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security ("the Commissioner") that Charlene LaPatra ("plaintiff")

is not disabled and, therefore, is not entitled to Social Security Disability benefits under Title II of

the Social Security Act ("the Act").

The Commissioner seeks reversal of her final decision and moves to remand the case for

further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). (Dkt. #6).

Plaintiff agrees that reversal is required, but argues that there is substantial evidence in the record

that she is disabled.  Plaintiff moves for judgment on the pleadings and to remand the case solely for

the calculation and payment of benefits. (Dkt. #3).

For the reasons discussed below, the Commissioner's motion is granted, plaintiff's motion is denied, and the case is remanded for further administrative proceedings consistent with this Decision and Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff applied for Social Security disability benefits on December 15, 2003 alleging disability as of June 6, 2003 due to depression, anxiety, panic attacks, and other mental health problems. (T. 52-53).[1]  At the time of her application, plaintiff was 43 years old.  She had a tenth grade education and had made an unsuccessful attempt to obtain a General Equivalency Diploma. For 25 years, plaintiff worked as a machine operator at the same employer.  In June 2003, she stopped working because she started having panic attacks.  Her primary case physician took her out of work and referred her to the Wayne Behavioral Health Clinic for psychiatric care. (T. 94, 96, 181). Since then, she has been receiving mental health treatment and has been diagnosed with, *inter alia*, an adjustment disorder with anxiety and depression, alcohol dependence, major depressive disorder, and generalized anxiety disorder. (T. 145, 148, 177, 182).

Upon initial review, plaintiff's application for disability benefits was denied on April 1, 2004. She appealed and a hearing was held on October 7, 2004 before Administrative Law Judge William T. Vest, Jr. ("ALJ"), at which plaintiff appeared with counsel and testified.  A vocational expert ("VE") also testified. (T. 226-62).  On December 7, 2004, the ALJ issued a decision finding that plaintiff had severe impairments, including alcohol dependency, anxiety, and depression, and that

---

[1] "T. __" refers to the page of the administrative transcript filed by the Commissioner.

none met or equaled the severity for a listed impairment.  The ALJ then concluded that plaintiff was

not disabled because she had the residual functional capacity to perform her past relevant work as

a machine operator.  (T. 13-18).  The ALJ's decision became the final decision of the Commissioner

when the Appeals Council denied plaintiff's request for review on April 15, 2005.  This action

followed.

## DISCUSSION

The Commissioner concedes that the ALJ committed certain legal errors when evaluating

whether plaintiff was disabled under the five-step disability evaluation.[2]   Specifically, the

Commissioner acknowledges that the ALJ  posed incomplete hypothetical questions to the

vocational expert, erred in evaluating the vocational expert's opinion testimony, and erred in

evaluating the medical opinions of Dr. Apacible regarding plaintiff's limitations. The Commissioner

---

[2]  The Second Circuit in *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir.1999) described the five-step process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in
> substantial gainful activity. Where the claimant is not, the Commissioner next considers
> whether the claimant has a "severe impairment" that significantly limits her physical or
> mental ability to do basic work activities.  If the claimant suffers such an impairment, the
> third inquiry is whether, based solely on medical evidence, the claimant has an
> impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant has a listed
> impairment, the Commissioner will consider the claimant disabled without considering
> vocational factors such as age, education, and work experience; the Commissioner
> presumes that a claimant who is afflicted with a listed impairment is unable to perform
> substantial gainful activity.  Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe impairment, she has the residual
> functional capacity to perform her past work.  Finally, if the claimant is unable to perform
> her past work, the burden then shifts to the Commissioner to determine whether there is
> other work which the claimant could perform.

moves to remand the case for further administrative proceedings.  Plaintiff, on the other hand, argues

that a remand solely for the calculation and payment of benefits is warranted.

I agree with the Commissioner.  This is not a case "[w]here the existing record contains

persuasive proof of disability and a remand for further evidentiary proceedings would serve no

further purpose." *Martinez v. Comm'r*, 262 F.Supp.2d 40, 49 (W.D.N.Y.2003); *see also Curry v.*

*Apfel*, 209 F.3d 117, 124 (2d Cir.2000).  Rather, "'[w]here there are gaps in the administrative record

or the ALJ has applied an improper legal standard,'" a remand to the Commissioner for further

development of the evidence and proper application of the correct legal standards is required.  *See*

*Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir.1996)(quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d

Cir.1980)); *see also Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir.1999).  A remand for further

proceedings is particularly appropriate where, as here, the ALJ did not complete all five steps of the

disability evaluation.[3]  *See Pronti v. Barnhart*, 339 F.Supp.2d 480, 489 (W.D.N.Y.2004).

In addition to the errors conceded by the Commissioner, I find that the ALJ made other

mistakes in his analysis that need to be remedied on remand.  As set forth below, on remand the ALJ

should consider the evidence filed with the Appeals Council regarding plaintiff's mental

impairments, reassess plaintiff's residual functional capacity, obtain further vocational expert

testimony, and, if necessary, determine whether plaintiff's alcohol dependence is a contributing

factor material to disability.

---

[3]  The ALJ in this case found plaintiff was not disabled at step four, and he made no
findings at step five regarding whether plaintiff could perform other work that exists in the
national economy.

*Evidence Submitted to the Appeals Council*

First, the ALJ needs to consider new evidence that plaintiff submitted to the Appeals Council after the ALJ issued his decision.  The new evidence includes, *inter alia*, a mental residual functional capacity assessment and a drug and alcohol evaluation prepared by plaintiff's treating psychiatrist, Dr. Royle Miralles. (T. 196-202). This evidence, which is now part of the  administrative record, *see Perez v. Chater*, 77 F.3d 41, 45 (2d Cir.1996), was not considered by the ALJ when making his residual functional capacity assessment.  Dr. Miralles found that plaintiff was "seriously limited" in seven categories of mental functioning, including her abilities to function independently on a job, to respond appropriately to supervision, to complete a normal workday, to concentrate and attend to workday tasks, and to tolerate customary work pressures.  In addition, he opined that plaintiff's condition would likely deteriorate if she were placed under job-related stress and that such deterioration had occurred in the past. (T. 199). The ALJ should weigh this treating source opinion in accordance with 20 C.F.R. § 404.1527(d), and reevaluate plaintiff's non-exertional limitations.


*Evaluating Plaintiff's Residual Functional Capacity*

In light of the new evidence, the ALJ also must reevaluate plaintiff's mental residual functional capacity.  The Commissioner's regulations define "residual functional capacity" as the most a  plaintiff can still do in a work setting on a regular and continuing basis despite her physical and mental limitations. 20 C.F.R. § 404.1545(a).  It is the responsibility of the ALJ to assess plaintiff's residual functional capacity based on all the relevant evidence in the case record. *Id.* Further, "[t]he residual functional capacity assessment must include a narrative discussion describing

how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling 96-8p, 1996 WL 374184, at *7 (S.S.A.); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir.1998).

As the Commissioner concedes, in his decision the ALJ failed to assess plaintiff's residual functional capacity in accordance with the applicable regulations. *See* 20 C.F.R. §§ 404.1520a; 404.1545(c). The ALJ did not consider all the pertinent medical evidence in the record regarding plaintiff's mental impairments, nor did he explain why he relied on certain opinions of record and not others. *See Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir.2000). For instance, in formulating plaintiff's residual functional capacity, the ALJ seems to have relied on only portions of the opinion of the State Agency review physician, Dr. M. Apacible.  No explanation is given for the selective use of the limitations Dr. Apacible found regarding plaintiff's non-exertional abilities.[4]  This is particularly important because the vocational expert testified that, if plaintiff had all of the mental limitations noted by Dr. Apacible, plaintiff would be precluded from doing any work at all. Moreover, the ALJ must explain the evidentiary basis for all of his findings regarding plaintiff's ability to perform the mental demands of work.  These errors should not be repeated on remand.

*Vocational Expert*

As the Commissioner concedes, the ALJ also did not properly evaluate the opinion of the VE regarding plaintiff's ability to perform her past relevant work in light of a limitation that she should

---

[4] Dr. Apacible's mental residual functional capacity assessment noted twelve separate areas of functioning where plaintiff was "moderately" limited. (T. 121-23).  However, the ALJ only found that plaintiff was limited in some of these areas.

not be exposed to dangerous machinery.  The ALJ concluded that the claimant had a residual functional capacity "to perform the strength demands of heavy work…[but had] significant nonexertional, mental and environmental limitations, including inability to work ... around dangerous machinery ...". (T. 16). The VE testified that the plaintiff's past job as a machine packager was not defined as dangerous.  He also explained that the Dictionary of Occupational Titles did not define which machines could be characterized as dangerous. (T. 254). But once the VE asked for clarification of what plaintiff's past relevant work entailed, he stated that, if the machines were malfunctioning as plaintiff described, they could be dangerous. (T. 257).  Despite this testimony, and despite the fact that the ALJ accepted the limitation that plaintiff could not work around dangerous machinery, the ALJ found that plaintiff could return to her past relevant work. (T. 17). The ALJ needs to reconcile this discrepancy on remand.

In addition, on remand, the ALJ should include in the hypothetical questions posed to the VE him all of plaintiff's mental impairments, including any impairments set forth in the assessments of Dr. Miralles that were not previously part of the record.  Moreover, the ALJ should seriously consider whether to include the limitation of low-stress work as part of that hypothetical question. Both the consultative examiner, John Thomassen, Ph.D., and plaintiff's treating psychiatrist, Dr. Miralles, opined that plaintiff had limitations relating to coworkers, supervisors, and coping with job-related stress. (T. 114; 199).  Further, the ALJ should also consider whether plaintiff's inability to respond appropriately to coworkers, supervisors, or work-related stress is significant enough to completely erode plaintiff's occupational base to justify a finding of disability.  *See* Social Security Ruling 85-15, 1985 WL 56857, at *4 (S.S.A.).

If the ALJ concludes, based on the VE's testimony, that plaintiff could not return to her past relevant work as a machine operator, the ALJ should then question the VE regarding whether there are any jobs that plaintiff could perform given her residual functional capacity and her non-exertional limitations.

*Evaluation of Plaintiff's Alcohol Dependence*

Finally, if the ALJ concludes after step five that plaintiff is disabled within the meaning of the Act, he must consider plaintiff's alcohol dependence.  The ALJ misunderstood how plaintiff's alcohol dependence should be considered in determining whether she is disabled.  The ALJ incorrectly found that plaintiff's alcohol dependence was a reason to find her testimony regarding her limitations not credible.  This is error.

Pursuant to 42 U.S.C. § 423(d)(2)(C), a person found to be disabled after employment of the sequential evaluation, will not be considered disabled within the meaning of the Act "if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  The regulations provide that the "key factor" in this analysis is whether the Commissioner would still find a person disabled if she stopped using alcohol. 20 C.F.R. § 404.1535(b)(1).  In this regard, the Commissioner must evaluate which of plaintiff's current physical and mental limitations would remain if she stopped using alcohol, and then determine whether those remaining limitations would be disabling.  *Id.* at § 404.1535(b)(2). If her remaining limitations would still be disabling, then alcoholism will not be a contributing factor material to the determination of disability and the disabled person will be eligible for benefits.

Plaintiff bears the burden of proving that her alcoholism is not a contributing factor material to the disability determination. *See Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003); *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001); *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Ostrowski v. Barnhart*, No. 01-CV-2321, 2003 WL 22439585, *3 (D. Conn. Oct. 10, 2003).

Thus, if necessary, the ALJ should develop the record regarding plaintiff's alcohol dependence, and then make the necessary findings regarding whether it is a contributing factor material to her disability. *See Frederick v. Barnhart*, 317 F.Supp.2d 286, 293 (W.D.N.Y.2004) (it was error for the ALJ to determine that plaintiff's alcoholism was material to her disability without employing the necessary analysis set forth in the regulations); *cf. Johnson v. Barnhart*, 312 F.Supp.2d 415 (W.D.N.Y.2003) (it was error for the ALJ to use alcoholism as a basis to find that plaintiff was not credible).

**CONCLUSION**

The Commissioner's motion (Dkt. #6) is granted, plaintiff's motion (Dkt. #3) is denied, and the case is remanded for further administrative proceedings consistent with this Decision and Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       December 8, 2005.

- 9 -